# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRUSTEES OF THE NATIONAL AUTOMATIC SPRINKLER INDUSTRY WELFARE FUND, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 8:19-cv-01406-PX |
| CRAIG M. BINGHAM | * | |
| Defendant. | * | |
| | * | |

## **MEMORANDUM OPINION**

Pending before the Court is Plaintiffs Trustees of the National Automatic Sprinkler Industry Welfare Fund, Trustees of the National Automatic Sprinkler Local 669 UA Education Fund, Trustees of the National Automatic Sprinkler Industry Pension Fund, Trustees of the Sprinkler Industry Supplemental Pension Fund, Trustees of the International Training Fund, and Road Sprinkler Fitters Local Union No. 669 Work Assessments and Extended Benefit Fund's Motion for Default Judgment. ECF No. 13. Defendant Craig M. Bingham has not filed a response or entered an appearance, and the time for doing so has passed. *See* Loc. R. 105.2.a. For the following reasons, Plaintiffs' request for this Court to enter default judgment is granted. Plaintiffs are awarded judgment in the amount of $304,388.34.

**I. Background**

The following facts are taken from the Complaint and accepted as true. Plaintiffs are employee benefit plans as that term is defined in section 3(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1002(3); ECF No. 1 ¶ 1. Plaintiffs are established and maintained according to the provisions of Restated Agreements and Declarations

of Trust ("Trust Agreements") and Collective Bargaining Agreements ("CBAs") between the Road Sprinkler Fitters Union No. 669, Sprinkler Fitters Union 542, and All Systems Fire Protection Company, Inc. ("All Systems"). ECF No. 1 ¶ 1.

All Systems is an employer engaged in an industry affecting commerce under ERISA, 29 U.S.C. § 1002(5), the Labor-Management Relations Act, 29 U.S.C. § 142(1), and the Multi-Employer Pension Plan Amendments of 1980, 29 U.S.C. § 1001(a). All Systems entered into CBAs that require it to submit contributions to Plaintiffs for each hour of work performed by All Systems employees to install automatic sprinkler systems. ECF No. 1 ¶ 2, 5. Specifically, All Systems is bound to the Trust Agreements and Plaintiffs' Guidelines for Participation ("Guidelines"). ECF No. 1 ¶ 6.

All Systems failed to make required benefit contributions owed to Plaintiffs. In response, Plaintiffs entered into a settlement agreement and promissory note ("Settlement Agreement") with All Systems. ECF No. 1 ¶ 8; *see* ECF No. 13-11. The Settlement Agreement provided that All Systems will pay in monthly installments over eighteen months the outstanding contribution amount of $243,014.98 owed to Plaintiffs under the Trust Agreement. ECF No. 1 ¶ 8. The Settlement Agreement also waived liquidated damages of $92,579.75, provided that, for the duration of the Settlement Agreement, All Systems stayed current on payments and future contributions, and filed timely monthly report forms pursuant to the Trust Agreements. ECF No. 1 ¶ 8. Bingham, President of All Systems, personally guaranteed all amounts owed to Plaintiffs under the Settlement Agreement, including any potential future payments. ECF No. 1 ¶¶ 3, 9; ECF No. 13-11 at 5, 13.

All Systems defaulted on the terms of the Settlement Agreement by failing to pay employee contributions and failing to submit report forms for March and April 2019. ECF No. 1

¶¶ 10–11.  Under the Settlement Agreement, the total amount due and owing is $230,518.19, representing the outstanding contribution payments and reinstated liquidated damages.  ECF No. 1 ¶ 10.  Additionally, payments under the Settlement Agreement for November 2018 through February 2019 were submitted late, which triggered All System's obligation to pay liquidated damages pursuant to the CBAs.  ECF No. 5 ¶ 14–15.

On May 13, 2019, Plaintiffs filed this action against All Systems and Bingham, seeking to recover contributions and liquidated damages due and unpaid under the terms of the CBAs, Trust Agreements, and Settlement Agreement, plus accrued interest, costs, and attorneys' fees. ECF No. 1 at 6–7. On June 20, 2019, Plaintiffs filed a Suggestion of Bankruptcy for All Systems which triggered an automatic stay of this litigation as to All Systems.  ECF No. 7.  The Court subsequently issued an order to administratively close this action against All Systems without prejudice.  ECF No. 8.  However, Bingham is jointly and severally liable for all amounts owed to Plaintiffs under the Settlement Agreement.  ECF No. 1 ¶¶ 9, 17.

Plaintiffs properly served Bingham on July 20, 2019.  ECF No. 9.  Bingham failed to answer or otherwise respond to the Complaint or contest Plaintiffs' claims.  On January 13, 2020, Plaintiffs simultaneously moved for entry of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure and for default judgment, ECF No. 12; ECF No. 13, and the Clerk entered default on February 7, 2020, ECF No. 14.  Accordingly, the motion for default judgment is ready for review.

**II.    Standard of Review**

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P.

55(a). Thereafter, the court may enter default judgment at the plaintiff's request and with notice to the defaulting party. Fed. R. Civ. P. 55(b)(2). A plaintiff, however, is not automatically entitled to default judgment simply because the defendant has not responded. Whether to enter default judgment is left to the sound discretion of the court. *See, e.g.*, *Choice Hotels Int'l, Inc. v. Jai Shree Navdurga, LLC*, No. DKC 11-2893, 2012 WL 5995248, at *1 (D. Md. Nov. 29, 2012); *see also Choice Hotels Int'l, Inc. v. Austin Area Hospitality, Inc.*, No. TDC–15–0516, 2015 WL 6123523, at *1 (D. Md. Oct. 14, 2015).

Although the United States Court of Appeals for the Fourth Circuit has announced a "strong policy" in favor of deciding cases on their merits, *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment may be appropriate when a party is unresponsive, *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)); *see Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987) (upholding a default judgment award where the defendant lost its summons and did not respond within the proper period); *Disney Enterprises, Inc. v. Delane*, 446 F. Supp. 2d 402, 405–06 (D. Md. 2006) (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him).

With respect to liability, the Court takes as true all well-pleaded facts in the complaint and construes them most favorably to the defendant. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The court applies the pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) in the

context of default judgments. *See, e.g.*, *Balt. Line Handling Co. v. Brophy,* 771 F. Supp. 2d 531, 544 (D. Md. 2011); *Russell v. Railey*, No. DKC-08-2468, 2012 WL 1190972, at *2–3 (D. Md. Apr. 9, 2012); *United States v. Nazarian*, No. DKC 10-2962, 2011 WL 5149832, at *2–3 (D. Md. Oct. 27, 2011); *Bogopa Serv. Corp. v. Shulga,* No. 3:08cv365, 2009 WL 1628881, at *1–2 (W.D.N.C. June 10, 2009). A complaint that avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," is insufficient to award default judgment. *See, e.g.*, *Balt. Line Handling Co.,* 771 F. Supp. 2d at 544 (internal quotation marks omitted) ("The record lacks any specific allegations of fact that show why those conclusions are warranted.").

If the complaint avers sufficient facts from which the court may find liability, the court next turns to damages. *See Ryan,* 253 F.3d at 780–81. Damages are circumscribed by that which is requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). The damages request must be supported by evidence introduced either at a hearing or by affidavit or other record evidence. *See id.*; *Lawbaugh,* 359 F. Supp. 2d at 422; *see, e.g.*, *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794–95 (D. Md. 2010).

**III. Analysis**

**A. Liability**

**1. Settlement Agreement**

"[T]o exercise its inherent power to enforce a settlement agreement, a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540–41 (4th Cir. 2002). To determine whether the parties have reached a complete agreement, courts look at the "objectively manifested intentions of the parties." *Moore v. Beaufort County*, 936 F.2d 159, 162 (4th Cir.

5

1991). Here, the Settlement Agreement objectively demonstrates that Plaintiffs and All Systems reached a complete agreement. ECF No. 13-11. Both the settlement agreement and promissory note were signed by the parties. ECF No. 13-11 at 7, 8, 9, 14. Further, the Settlement Agreement makes plain that Bingham personally guaranteed payment under its terms, including any future amounts owed to Plaintiffs for the duration of the agreement. *See id*. ¶¶ 10, 14. Thus, to the extent All Systems did not honor the Settlement Agreement, Bingham assumes the financial consequences of the breach, to include late or unpaid future contributions resulting liquidated damages and attorneys' fees and costs. ECF No. 13-11 ¶¶10, 14.

## 2. Future Contributions During Settlement Period

ERISA requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *see also* 29 U.S.C. § 1132(g) (providing that employers who fail to timely make contributions are liable in a civil action for, *inter alia*, unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorneys' fees, and costs of the action). ERISA "provide[s] trustees of multiemployer benefit plans with an effective federal remedy to collect delinquent contributions." *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 685–86 (D. Md. 2013) (quoting *Laborers Health & Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988)). The United States Court of Appeals for the Fourth Circuit has held that "a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018,

1021 (4th Cir. 1997).

Taking the well-pleaded facts in the Complaint as true, Plaintiffs have established that All Systems was required to make payments under the Settlement Agreement and employer contributions to Plaintiffs. All Systems failed to do so. ECF No. 1. Bingham is thus liable for the payment of amounts owed to Plaintiffs. Default judgment in the amount of unpaid Settlement and contributions is appropriate.

### B. Damages

#### 1. Settlement Agreement

Plaintiffs seek damages from Bingham for breach of the Settlement Agreement. District courts maintain inherent equitable authority to enforce settlement agreements. *Hensley*, 277 F.3d 540. Exercising such authority effectively amounts to entry of judgment by consent. *Id.* A court enforcement of a settlement agreement does not require the parties to seek such relief by initiating a new cause of action when the request for enforcement arises "within the context of the underlying litigation." *Id.* Because Plaintiffs and All Systems reached a complete agreement and its terms are ascertainable, the Court may enforce the Settlement Agreement summarily so long as any proffered excuse for non-performance is comparatively insubstantial. *Id.*; *see also* Loc. R. 105(6). A court must hold a plenary hearing only where parties dispute the existence or validity of a settlement agreement. *Med. Shoppe Int'l, Inc. v. Siddiqui*, 549 F. App'x 131, 134 (4th Cir. 2013).

Bingham has not disputed the existence or validity of the Settlement Agreement. Accordingly, the Court may summarily enforce the agreement. Under the terms of the Settlement Agreement, Bingham must pay reinstated liquidated damages ($92,579.75) and unpaid principal ($137,938.44) owed to Plaintiffs in the amount of $230,518.19 plus costs and

1021 (4th Cir. 1997).

Taking the well-pleaded facts in the Complaint as true, Plaintiffs have established that All Systems was required to make payments under the Settlement Agreement and employer contributions to Plaintiffs. All Systems failed to do so. ECF No. 1. Bingham is thus liable for the payment of amounts owed to Plaintiffs. Default judgment in the amount of unpaid Settlement and contributions is appropriate.

### B. Damages

#### 1. Settlement Agreement

Plaintiffs seek damages from Bingham for breach of the Settlement Agreement. District courts maintain inherent equitable authority to enforce settlement agreements. *Hensley*, 277 F.3d 540. Exercising such authority effectively amounts to entry of judgment by consent. *Id.* A court enforcement of a settlement agreement does not require the parties to seek such relief by initiating a new cause of action when the request for enforcement arises "within the context of the underlying litigation." *Id.* Because Plaintiffs and All Systems reached a complete agreement and its terms are ascertainable, the Court may enforce the Settlement Agreement summarily so long as any proffered excuse for non-performance is comparatively insubstantial. *Id.*; *see also* Loc. R. 105(6). A court must hold a plenary hearing only where parties dispute the existence or validity of a settlement agreement. *Med. Shoppe Int'l, Inc. v. Siddiqui*, 549 F. App'x 131, 134 (4th Cir. 2013).

Bingham has not disputed the existence or validity of the Settlement Agreement. Accordingly, the Court may summarily enforce the agreement. Under the terms of the Settlement Agreement, Bingham must pay reinstated liquidated damages ($92,579.75) and unpaid principal ($137,938.44) owed to Plaintiffs in the amount of $230,518.19 plus costs and

attorneys' fees. ECF No. 13-11 ¶ 14; *see* ECF No. 1 ¶ 8; ECF No. 13-1 at 2; ECF No. 13-20.

### 2. ERISA

As to ERISA damages, Plaintiffs, by statute, may collect (1) delinquent contributions, (2) liquidated damages assessed on the late contributions, (3) interest at the rate provided in 29 U.S.C. § 1132(g), (4) attorneys' fees and costs, and (5) other legal or equitable relief the Court deems appropriate. *See* 29 U.S.C. § 1132(g).

In support of their damages request, Plaintiffs submit the relevant CBAs and Trust Agreements, ECF No. 13-5; ECF No. 13-6; ECF No. 13-7; ECF No. 13-8; ECF No. 13-9; ECF No. 13-10; ECF No. 13-12; ECF No. 13-13; ECF No. 13-14; ECF No. 13-15; ECF No. 13-16; ECF No. 13-17; ECF No. 13-18; a declaration of Michael W. Jacobson, the Fund Administrator for Plaintiffs, ECF No. 13-4; and a record of contributions owed, contributions received, and liquidated damages assessed, ECF No. 13-20. As for attorneys' fees and costs, Plaintiffs submit the declaration of Charles W. Gilligan, the attorney assigned to this case. ECF No. 13-21. Because this evidence is sufficient for the Court to ascertain allowable damages and the requested amounts are consistent with that which is sought in the Complaint, the Court will award damages without a hearing and rely on the declarations and other record evidence to determine the appropriate amount. *See, e.g.*, *Monge*, 751 F. Supp. 2d at 794–96.

#### a. Unpaid Contributions

Pursuant to the record, Bingham owes Plaintiffs $41,870.50 in unpaid contributions for the months of March through April of 2019. ECF No. 1 ¶ 13; ECF No. 1-4; ECF No. 13 ¶ 2; ECF No. 13-1 at 2; ECF No. 13-20. Based on this evidence, the Court awards these amounts in unpaid contributions.

### b. Liquidated Damages

The Trust Agreements provide that an employer's failure to pay timely contributions under the CBAs triggers payment of liquidated damages as follows: (1) 10% penalty on payment not received by the 15th of the month; (2) an additional 5% on payment not received by the end of the month; and (3) an additional 5% on payment not received by the 15th of the month following the month in which payment was due. ECF No. 1 ¶ 15; ECF No. 13-13 at 24; ECF No. 13-14 at 21–22; ECF No. 13-15 at 23; ECF No. 13-16 at 22; 13-17 at 58. The Court has reviewed the delinquent payment amounts and the penalties assessed as liquidated damages. *See* ECF No. 1 ¶¶ 15, 16; ECF No. 1-4; ECF No. 13 ¶ 3; ECF No. 13-1 at 2; ECF No. 13-1 at 2; ECF No. 13-20. Based on this evidence, the Court awards $23,514.87 in liquidated damages to Plaintiffs, plus accruing liquidated damaged through the date of payment.

### c. Interest

Plaintiffs are also entitled to interest on late and unpaid contributions. Interest is "determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g). Pursuant to 29 U.S.C. § 1132(g)(2)(B) and the Trust Agreements, Plaintiffs are entitled to annual interest rate of 12% on All Systems' unpaid contributions. Plaintiffs request $5,898.03 as interest which this Court will award. *See* 29 U.S.C. § 1132(g)(2)(B); ECF No. 13-13 at 37; ECF No. 13-14 at 34; ECF No. 13-15 at 36; ECF No. 13-16 at 35; ECF No. 13-17 at 58; *see also* ECF No. 13-18 ("Interest will be assessed on late paid contributions at the rate of 12% per annum."). [1]

---

[1] Although the damages sought are greater than the amounts pleaded in the Complaint, the award is nonetheless appropriate. This is because default judgment may include interest on the unpaid contributions calculated from the date due until the date paid at the rate of 12% per annum. *See* ECF No. 1 at 6–7; ECF No. 13-13 at 37; ECF No. 13-14 at 34; ECF No. 13-15 at 36; ECF No. 13-16 at 35; ECF No. 13-17 at 58; see also ECF No. 13-

Plaintiffs will also be entitled to post-judgment interest. *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."); *see also I.A.M. Nat'l Pension Fund, Plan A, A Benefits v. Slyman Indus.*, 704 F. Supp. 301, 302–03 (D.D.C.), *aff'd*, 901 F.2d 127, 129 (D.C. Cir. 1990). Post-judgment interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a). Thus, post-judgment interest shall continue to accrue until the judgment is satisfied.

### d. Attorneys' Fees and Costs

Finally, Plaintiffs are entitled to attorneys' fees and costs under the Settlement Agreement and Trust Agreements. ECF No. 13-11 ¶ 14 ("[C]raig M. Bingham agree[s] to be jointly and severally liable to pay costs and attorneys' fees."); ECF No. 13-13 at 25 ("All reasonable expenses incurred by the Trust Fund to enforce the payment of amounts due, including . . . attorneys['] fees, . . . and court costs will be added to the amount owed by the delinquent Employer . . . ."); ECF No. 13-14 at 22; ECF No. 13-15 at 23; ECF No. 13-16 at 22; ECF No. 13-17 at 58–59. The Court considers the reasonableness of attorneys' fees under Appendix B to the Local Rules and the following factors: the professional time and labor invested, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; the likelihood, if apparent to the client, that the lawyer's acceptance of the particular engagement will preclude other employment; the fee customarily charged in the

---

18. The Court finds that the additional amounts are permissible. *See Trs. of Nat'l Automatic Sprinkler Indus. Welfare Fund v. Harvey*, No. GJH-17-0449, 2017 WL 4898264, at *5 (D. Md. Oct. 27, 2017); *see also Trs. of Nat'l Automatic Sprinkler Indust. Welfare Fund v. First Responder Fire Prot. Corp.*, No. GJH-16-4000, 2017 WL 3475678, at *2 (D. Md. Aug. 11, 2017) ("Defendant is fairly regarded to be on notice of the subsequent increase due to the continuing obligations to make contributions to the Funds under the applicable collective bargaining agreements."). However, the Court's independent calculations suggest that Plaintiffs have undervalued the interest owed. Out of an abundance of caution, however, the Court confines its award to Plaintiffs' requested amount.

locality for similar legal services; the amount in controversy and the results obtained; the time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the client; the experience, reputation, and ability of the lawyer or lawyers performing the services; and whether the fee is fixed or contingent. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009); Loc. R., App'x B.

Plaintiffs are represented by Charles W. Gilligan of the law firm of O'Donoghue & O'Donoghue, LLP, who has been a licensed attorney since 1986 and a partner of the firm since 1993. *See* ECF No. 13-21 ¶ 1. Prior to November 1, 2019, Gilligan charged $310.00 per hour, and his paralegal, Teresa Butler, charged a rate of $122.00 per hour as part of a negotiated fee with Plaintiffs. *Id.* ¶¶ 2, 5. After November 1, 2019, Gilligan charged $325.00 per hour, and his paralegal Teresa Butler, charged a rate of $145.00 per hour. *Id.* ¶¶ 2, 6. Both rates fall within the presumptively reasonable ranges established by this Court's Local Rules. *Id.* ¶¶ 5, 6; Loc. R. 1(c), App'x B (providing a range of $300 to $475 per hour for attorneys admitted to the bar for 20 or more years, and a range of $95 to $150 per hour for paralegals and law clerks).

Gilligan attests that the firm spent a total of 14.75 hours on Plaintiffs' matter, of which he attributes 0.75 hours to himself and 14 hours to Butler. ECF No. 13-21 ¶¶ 3; *see* 13-22. Both appear reasonable given the nature and scope of this case. The lodestar calculation (reasonable hourly rate multiplied by hours of work performed) thus supports pre- and post-November 1, 2019 rates, and the requested award of $2,001.75 in attorneys' fees for Plaintiffs. The record also supports Plaintiffs' request for $585.00 in legal fees and miscellaneous costs. *See* ECF No. 13-21 ¶ 7; ECF No. 13-22; ECF No. 13-23. Therefore, the Court grants Plaintiffs' request for $2,001.75 in attorneys' fees and $585.00 in costs.

## IV. Conclusion

Based on the foregoing, the Plaintiffs' motion for default judgment is granted. A separate Order follows.

  2/19/2020  
Date

/S/  
Paula Xinis  
United States District Judge